# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **JASON DEROUEN, SR.** | **CIVIL ACTION NO. 6:18-0072** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **MARK A. HEBERT, ET AL.** | **MAG. JUDGE CAROL B. WHITEHURST** |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 18] filed by Defendant former St. Mary Parish Sheriff Mark Hebert ("Hebert").[1] Plaintiff Jason Derouen, Sr. ("Derouen") has filed a memorandum in opposition to the motion. [Doc. No. 24]. Hebert filed a reply memorandum. [Doc. No. 25].

For the following reasons, the Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## I. FACTS AND PROCEDURAL HISTORY

Late in the evening of January 20, 2017, Derouen was stopped for speeding. Although further facts were not provided, Derouen was arrested for possession of Vyvanse, a controlled substance, and transported to the St. Mary Parish Law Enforcement Center.

The following morning, his family attempted to bond him out of custody, but could not because there was allegedly a hold on his bond. After learning that he was going to remain in custody, Derouen avers that he had an anxiety attack and started coughing excessively. He was seen by a nurse, who administered Benadryl.

---

[1] Sheriff Hebert has retired since the time this lawsuit was initiated.

Derouen avers that he first asked for a medical pod. Then he asked for an insolation pod. Lieutenant Kevin Savoy ("Savoy")[2] allegedly told Derouen he would take him to a "cool pod" without "problems." [Doc. No. 24-4, Derouen Aff., ¶ 5]. Savoy placed Derouen in Wolf-B Dorm.

While walking through the dorm, Derouen noticed that the lights were off. He further avers that, while Savoy was standing in the open doorway to the Wolf-B Dorm, inmates yelled that they did not want any "white boys" in there and threatened to "fuck [Derouen] up." [Doc. No. 24-4, Derouen Aff., ¶ 6]. (The other inmates in Wolf-B Dorm were African-American, while Derouen is white). Derouen further avers that he asked Savoy to let him out of the dorm "before I have to fight." *Id.* at ¶ 7. He avers that Savoy closed the door in his face and then "stood still" and "looked" at Derouen when Derouen "banged on the door to be let out." *Id.*

The inmates then attacked and beat Derouen, and he avers that Savoy was looking through the door. Derouen avers that he then lost consciousness and "regained it as . . . Savoy drug me out of the Wolf-B [Dorm] into the hallway." *Id.* at ¶ 10.

Derouen suffered facial injuries requiring stitches and reconstruction.

Savoy denies hearing any inmates making statements that they intended to engage in an altercation with Derouen, harm him in any way, or knowing in any way that Derouen was not safe in the dorm. He, in fact, entered the dorm to engage "the inmates attacking Jason Derouen, and assisted in removing him from the dorm to safety." [Doc. No. 18-10, Savoy Declaration, Exh. C, ¶ 13].

---

[2]Savoy is the unidentified deputy named in the lawsuit as "John Doe." Although Derouen indicated that he would move to amend his Complaint to name Savoy as a Defendant, he has not done so.

Following the incident, Lieutenant Thane Dusek ("Dusek") of the St. Mary Parish Sheriff's Office conducted an investigation.[3] As part of the investigation, Dusek interviewed Derouen and recorded the interview. Dusek declares that he did not find out any information to indicate that there was prior warning of an attack on Derouen.

The St. Mary Parish Law Enforcement Center has a three-step Administrative Remedy Procedure ("ARP") which is explained to all inmates. The procedure is found in the facility policy manual and is also written on the ARP grievance forms. Derouen never submitted a grievance about his attack. However, Derouen was released from custody after this incident took place.

It is the policy of the St. Mary Parish Sheriff's Office that all newly hired Correctional Deputies will be P.O.S.T. certified within one year of hiring. P.O.S.T. is an acronym for Peace Officer Standards and Training and is administered by the Louisiana P.O.S.T. Council. The P.O.S.T. Council consists of three chiefs of police, three sheriffs, two district attorneys, the Superintendent of State Police, the Attorney General, the Executive Director of the Louisiana Commission on Law Enforcement and Administration of Criminal Justice, and the President of the Louisiana Chapter of the National Constables' Association. The P.O.S.T. Council formulates the training curriculum to train all law enforcement and correctional officers in the state to comply with state and federal training standards and requirements.

Savoy attended the 249-hour P.O.S.T. training course, completed the course, and was awarded his P.O.S.T. certification on March 11, 2015. Savoy has also completed additional training programs, in-house refresher courses, and obtained P.O.S.T. firearms recertification each year. At the time he was hired by the St. Mary Parish Sheriff's Office, Savoy had several years' experience as a correctional officer in other parishes, as well as military service experience.

---

[3]Derouen characterizes Dusek's "investigation" as his having "asked a few questions" and then having Derouen "sign a document so he could be released from custody." [Doc. No. 24-4, ¶ 11].

Additionally, when he was hired, his references were contacted, and his prior parish of employment indicated that they would hire him again if given the opportunity.

The St. Mary Parish Law Enforcement Center has a policy that inmates may not be placed in dorms in which they would be in known danger. To effect this policy, an "enemies" entry is made into the jail management system, showing that an inmate has enemies in a certain dorm.

On January 21, 2018, Derouen initiated this action, asserting claims under 42 U.S.C. § 1983 against Sheriff Hebert in his official capacity, as well as related state law claims. He contends that Sheriff Hebert is liable in his official capacity for failure to train and/or supervise Deputy Savoy, that he is vicariously liable under state law for Savoy's actions, and that he is also liable under state law for negligent hiring and/or supervision.

On September 11, 2019, Sheriff Hebert filed the instant Motion for Summary Judgment. On October 28, 2019, Derouen filed a memorandum in opposition [Doc. No. 24] to the Motion for Summary Judgment. On November 4, 2019, Sheriff Hebert filed a reply memorandum [Doc. No. 25] in support of the Motion for Summary Judgment.

With full briefing complete, the Court is now prepared to rule.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its

existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### A.  Official Capacity/ *Monell* Claims

A plaintiff suing under § 1983 must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)). A plaintiff may assert a § 1983 suit against a person in his or her individual or official capacity as well as against governmental entities. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Derouen has sued Sheriff Hebert only in his official capacity. An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781, 784-85, (1997)[3]; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999). Therefore, the claim against Sheriff Hebert is treated as a claim against St. Mary Parish.

In the instant matter, Derouen does not allege that Sheriff Hebert was personally involved in the incident leading to his injuries. Therefore, he must show that a government policy or custom caused the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978); *Board of Cnty. Comm'nrs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 n. 10 (5th Cir. 2000). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. . . .[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691.

A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Burge*, 336 F.3d at 369.

---

[3]As the Supreme Court explained,

> a suit against a governmental officer "in his official capacity" is the same as a suit "'against [the] entity of which [the] officer is an agent,'" *Kentucky. . .* , 473 U.S. . . [at] 165 . . . (quoting *Monell v. New York City Dept. of Social Servs*., 436 U.S. 658, 690, n. 55 . . .(1978) and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents," *Brandon . . . ,* 469 U.S. . . [at] 471 . . . .

*McMillian,* 520 U.S. at 785 n. 2.

> It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the [governmental entity]. The plaintiff must also demonstrate that, through its deliberate conduct, the [governmental entity] was the "moving force" behind the injury alleged. That is, a plaintiff must show that the . . . action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the . . . action and the deprivation of federal rights.

*Bryan Cnty.*, 520 U.S. at 404.

"Proof of [governmental] liability sufficient to satisfy Monell requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009) (There must be "proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom.").

First, the most obvious way a plaintiff may meet this requirement is to show that his constitutional injury was the result of "[a] policy statement, ordinance, regulation, or decision that [was] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers . . . delegated policy-making authority." *Webster v. City of Houston*, 352 F.3d 994, 1013 (5th Cir. 2003); *see also Monell*, 436 U.S. at 691.

Second, a plaintiff may also establish municipal liability through a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *see also Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403 (1997) ("[A]n act performed pursuant to a

'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citing *Monell*, 436 U.S. at 690-691) (other citations omitted); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("Relying on the language of § 1983, the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. . . . That principle, which has not been affected by *Monell* or subsequent cases, ensures that most deliberate municipal evasions of the Constitution will be sharply limited.") (citations and internal quotation marks omitted); *Mason v. Lafayette-City-Par. Consol.Gov't*, 806 F.3d 268, 280 (5th Cir. 2015); *cf. Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987) (Proof of random acts or isolated events are insufficient to establish custom.)

"The 'moving force' inquiry requires a plaintiff to make two showings: causation and culpability." *Mason*, 806 F.3d at 280 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, (1997)). This inquiry imposes a causation standard higher than "but for" causation. *Id.* (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)).

In this case, Sheriff Hebert admits that he is a policy maker for St. Mary Parish, and, thus, Derouen can establish the first prong. However, he argues that he is entitled to summary judgment because Derouen cannot establish the second and third prongs. Specifically, he contends that there is no evidence that of any policy or custom of negligent hiring, training, or supervision, or that any policy or custom was the moving force behind the alleged constitutional violations. Sheriff Hebert contends that he hired an experienced correctional officer with excellent references, who was also

P.O.S.T. certified. He further had policies in place to house inmates safely and away from threats, and an immediate review and investigation into this incident was conducted.

Derouen responds that there is a genuine issue of material fact for trial because it appears that Savoy was not P.O.S.T. certified on January 21, 2017, the time of the incident. Specifically, relying on Savoy's records, Derouen contends that Savoy was awarded his P.O.S.T. certification on March 11, 2015, but failed to requalify within 13 months. Derouen cites to the Louisiana Commission of Law Enforcement and Administration of Criminal Justice policy that individuals who fail to requalify within the 13-month period must complete an 8-hour-pre-academy firearms course. Derouen argues that there is no evidence Savoy completed this course.

Sheriff Hebert responds that there is no genuine issue of material fact for trial because there is no "actual controversy." *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Savoy was P.O.S.T. certified at the time of the incident. Both Savoy and the Chief Deputy for St. Mary Parish provided declarations that Savoy was P.O.S.T. certified at the time. [Doc. Nos. 18-3, Exh. A, Driskell Declaration, & 18-10, Exh. C, Savoy Declaration]. Further, his P.O.S.T. certificate was authenticated and filed in the record. [Doc. No. 18-4]. The same records that Derouen relies on show that Savoy qualified with his weapon on April 15, 2015, and May 19, 2016, and the fact that Savoy was four days late does not render him unqualified. [Doc. No. 18-5]. P.O.S.T. certified him based on these records, and he was requalified in 2017, 2018, and 2019. Sheriff Hebert argues further that, even if there were a deficiency in Savoy's certification, Derouen has failed to meet his showing on the third prong that such violation was the "moving force," *see Davis*, 565 F.3d at 227, behind the alleged constitutional injury.

The Court finds that the only "policy" Derouen relies upon is the P.O.S.T. certification of St. Mary Parish Sheriff's deputies. However, he has failed to raise a genuine issue of material fact that

9

Savoy was **not** certified at the time of the incident. Derouen characterizes Savoy as being "originally qualified" in March 2015 and that he failed to timely re-qualify within 13 months. The records upon which he relies and which were authenticated by the declaration of St. Mary Parish Sheriff's Chief Deputy Gary Driskell, show that he completed the P.O.S.T. academy training in March 2015. As Sheriff Hebert points out, Savoy was re-qualified with his weapon on April 15, 2015, and then again on May 19, 2016. Derouen, therefore, has failed to raise a genuine issue of material fact for trial that Savoy lacked P.O.S.T. certification.

Moreover, even if P.O.S.T. improperly or incorrectly certified him, Derouen has failed to show that Sheriff Hebert's continued employment of Savoy constituted a Parish policy of failing to train or supervise deputies. Derouen has presented no evidence that Sheriff Hebert routinely failed to require proper training of the deputies under his command. In fact, the only records of deputy training in evidence, those of Savoy, show that he has had extensive training while employed by the St. Mary Parish Sheriff.

Finally, Derouen has also failed to raise a genuine issue of material fact for trial that the perceived lack of P.O.S.T. certification was the moving force behind his injury. Whether Savoy timely re-qualified for P.O.S.T. certification by taking his firearms test has no bearing on the placement of Derouen in the Wolf-B Dorm.

For these reasons, Sheriff Hebert's Motion for Summary Judgment on Derouen's official capacity claim against him is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### B. State Law Claims

Derouen has also brought state law claims. However, a district court may, and the general rule is that it should, decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The

district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1465 (5th Cir.), *cert. denied*, 516 U.S. 818 (1995) (district court did not abuse discretion by remanding remaining state claims). Given the dismissal of Derouen's § 1983 claims and having considered those factors of judicial economy, convenience, fairness, federalism, and comity, the Court finds that these claims should be dismissed without prejudice. The case has been pending for slightly less than two years, trial preparation has not yet begun, and, as a matter of comity and justice, the arguments raised in summary judgment are more appropriately addressed by a state court. Accordingly, Sheriff Hebert's Motion for Summary Judgment on Derouen's state law claims is DENIED.

### III.    CONCLUSION

For the foregoing reasons, Sheriff Hebert's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. To the extent that Sheriff Hebert moves for summary judgment on Derouen's § 1983 claims against him in his official capacity, the motion is GRANTED, and those claims are DISMISSED WITH PREJUDICE. To the extent that Defendant moves for summary judgment on Derouen's state law claims, the motion is DENIED. The Court declines to exercise supplemental jurisdiction over those claims, and they are DISMISSED WITHOUT PREJUDICE.

MONROE, LOUISIANA, this 9th day of December, 2016.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE